CASE NO. 12-50513

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

STEVEN E. SWENSON,

*Plaintiff-Appellant*

v.

SCHWAN'S CONSUMER BRANDS NORTH AMERICA, INC.,

*Defendant-Appellee*

Appeal from the United States District Court
for the Western District of Texas, San Antonio Division

---

BRIEF OF APPELLANT
STEVEN E. SWENSON

---

The McKinney Law Firm, P.C.
Christopher J. McKinney
Texas Bar No. 00795516
Ashley Barr
Texas Bar No. 24078198
700 East Sonterra, Ste 1221
San Antonio, Texas  78258
Telephone:(210) 832-0932
Facsimile: (210) 568-4101
chris@themckinneylawfirm.com
*ashley@themckinneylawfirm.com*
Attorneys for Appellant
Steven E. Swenson

## <u>CERTIFICATE OF INTERESTED PARTIES AND COUNSEL</u>

Pursuant to Federal Rule of Appellant Procedure 26.1 and 5th Cir. Rule 28.2.1, Steven E. Swenson, Plaintiff-Appellant represents:

1.   The number and style of the case is: Cause No.: 10-602; *Steven E. Swenson v. Schwan's Consumer Brands North America, Inc.,*; In the United States District Court, Western District of Texas

2.   The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of 5th Cir. Rule 28.21 have an interest in the outcome of the case. These representations are made in order that the Judges of this Court may evaluate possible disqualification or recusal:

<u>Plaintiff-Appellant:</u>

Steven E. Swenson - Appellant

Counsel for Plaintiff-Appellant:
Christopher J. McKinney
      Texas Bar No. 00795516
Ashley Barr
      Texas Bar No. 24078198
The McKinney Law Firm, P.C.
700 E. Sonterra Blvd., Suite 1221
San Antonio, Texas 78258
(210) 832-0932 - Telephone
(210) 568-4101 - Facsimile

<u>Defendant-Appellee:</u>

Schwan's Consumer Brands North America, Inc. - Appellee

i

Schwan's Global Consumer Brands, Inc. - Parent Corporation of Appellee
The Schwan Food Company - Owner of Schwan's Global Consumer Brands, Inc.

Counsel for Defendant-Appellee:

Alan Lloyd Rupe
        Texas Bar No. 24028461
Jessica L. Garner
        Kansas Bar No. 24178
S. Douglas MacKay
        Kansas Bar No. 16788
Kutak Rock LLP
1605 N. Waterfront Parkway, Suite 150
Wichita, KS 67206
(316) 609-7900 - Telephone
(316) 630-8021 - Facsimile

Charlie J. Cilfone
        Texas Bar No. 04251200
Shelton & Valdez, P.C.
600 Navarro Street - Suite 500
San Antonio, TX 78205
(210) 349-0515 - Telephone
(210) 349-3666 - Facsimile

                                        Respectfully Submitted:

                                        /s/ Christopher J. McKinney
                                        Christopher J. McKinney
                                        Ashley Barr
                                        Attorneys of Record for Steven E. Swenson

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiff-Appellant respectfully requests the Court grant oral argument in this cause as it will aid in the Court's consideration and simplify its decision process.

## STATEMENT REGARDING RECORD REFERENCES

For the convenience of the Court, references to "R1", "R2", "R3" and "R4" refer, respectively, to the first, second, third, and fourth volumes of the Record on Appeal.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PARTIES AND COUNSEL .............................i

STATEMENT REGARDING ORAL ARGUMENT .............................................iii

TABLE OF CONTENTS .......................................................................................iv

TABLE OF AUTHORITIES ...............................................................................vii

STATEMENT OF JURISDICTION ........................................................................1

STATEMENT OF THE ISSUES ............................................................................1

STATEMENT OF THE CASE ...............................................................................1

STATEMENT OF FACTS ......................................................................................2

A. SCHWAN'S HR CONDUCTS "INVESTIGATION" ........................................6

B. SIMILARLY-SITUATED YOUNGER EMPLOYEES RECEIVED MORE
   FAVORABLE TREATMENT .............................................................................6

SUMMARY OF THE ARGUMENT ......................................................................7

ARGUMENT ..........................................................................................................8

A. STANDARD OF REVIEW ................................................................................8

B. SWENSON ESTABLISHED A PRIMA FACIE CASE OF AGE
   DISCRIMINATION ...........................................................................................9

C. SCHWAN'S STATED REASON FOR DISCHARGE WAS A PRETEXT FOR
   AGE DISCRIMINATION ...................................................................................9

   1. THE EVIDENCE PRESENTED SHOULD BE VIEWED AS A WHOLE
      .........................................................................................................................9

2. COURT IMPROPERLY ANALYZES EVIDENCE INDICATING THAT SCHWAN'S STATED REASON FOR DISCHARGE IS FALSE ...............10

   a. THE DISTRICT COURT MISAPPLIED LAXTON. EVIDENCE THAT STATED REASON FOR DISCHARGE IS FACTUALLY FALSE IS SUFFICIENT TO RAISE A FACT ISSUE THAT UNLAWFUL ANIMUS WAS, AT THE VERY LEAST, A MOTIVATING FACTOR FOR THE DISCHARGE .......................................................................11

   b. SUMMARY JUDGMENT EVIDENCE RAISES A FACT ISSUE AS TO THE FALSITY OF SCHWAN'S STATED REASON FOR DISCHARGE ...........................................................................................................12

     i. SUMMARY JUDGMENT RECORD IS CLEAR THAT SWENSON DID NOT ENCOURAGE AND ALLOW CHARLES FOSTER, A SUBORDINATE EMPLOYEE, TO USE HIS VACATION DAYS BUT NOT ACTUALLY TAKE ANY TIME OFF FROM WORK ...13

     ii. SUMMARY JUDGMENT RECORD ESTABLISHED THAT SCHWAN'S KNEW THE COMPANY'S STATED REASON FOR DISCHARGE WAS FALSE AT THE TIME IT TERMINATED SWENSON .......................................................................14

     iii. SCHWAN'S PAYROLL DEPARTMENT DID NOT DISAPPROVE OF THE ACTION WHEN INFORMED OF IT AND THE VACATION POLICY STATES THAT SAID DEPARTMENT ADMINISTERS THE RULE ...........................................................15

     iv. FORMER DISTRICT MANAGER FOR THE EXACT SAME TERRITORY CONFIRMED THAT SWENSON'S ACTIONS WERE NOT A VIOLATION OF THE VACATION POLICY IN QUESTION AND THAT THE VIOLATION OF SAID POLICY WOULD NOT BE A TERMINABLE OFFENSE IN ANY EVENT .........................15

   c. EVIDENCE SCHWAN'S TRIED TO FORCE AN EMPLOYEE TO LIE TO SUPPORT ITS TERMINATION DECISION FURTHER EVIDENCE THAT SCHWAN'S DID NOT HAVE A GOOD FAITH BELIEF IN ITS STATED REASON FOR DISCHARGE .....................16

3. DISTRICT COURT IMPROPERLY DISREGARDED EVIDENCE OF DISCRIMINATORY ANIMUS ...................................................................17

4. COURT IMPROPERLY DISREGARDS EVIDENCE OF DISPARATE TREATMENT OF YOUNGER EMPLOYEES ..........................................21

5. COURT IMPROPERLY DISREGARDS EVIDENCE OF SCHWAN'S FAILURE TO FOLLOW ITS OWN PROGRESSIVE DISCIPLINARY POLICY .......................................................................................23

D. SCHWAN'S IS NOT ENTITLED TO PARTIAL SUMMARY JUDGMENT ON THE BASIS OF SO-CALLED AFTER-ACQUIRED EVIDENCE .................24

CONCLUSION ......................................................................................26

CERTIFICATE OF SERVICE ...............................................................28

CERTIFICATE OF COMPLIANCE .......................................................29

# TABLE OF AUTHORITIES

## CASES

*Threadgill v. Prudential Sec. Group, Inc.*,
 145 F.3d 286 (5th Cir. 1998) .......................................................................8

*Reeves v. Sanderson Plumbing Products, Inc.*,
 530 U.S. 133 (2000) ...........................................................................9, 11-12

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
 475 U.S. 574 (1986) ..................................................................................9

*Laxton v. Gap Inc.*,
 333 F.3d 572 (5th Cir. 2003) ...........................................................10-12, 18

*Staten v. New Palace Casino, LLC*,
 2006 WL 1737438, 187 Fed. Appx. 350, 358 (5th Cir. 2006) ...............10-11

*Argyropoulos v. City of Alton*,
 539 F.3d 724 (7th Cir. 2008) ......................................................................11

*Culver v. Gorman & Co.*,
 416 F.3d 540 (7th Cir. 2005) ......................................................................11

*Koski v. Standex Int'l Corp.*,
 307 F.3d 672 (7th Cir. 2002) ......................................................................11

*Raad v. Fairbanks North Star Borough School Dist.*,
 323 F3d 1185 (9th Cir. 2003) .....................................................................11

*Sandstad v. CB Richard Ellis, Inc.*,
 309 F.3d 893, 897 (5th Cir. 2002) .........................................................12, 18

*Russell v. McKinney Hosp. Venture*,
 235 F.3d 219, 225 (5th Cir. 2000) ......................................................12, 17-18

*Moss v. BMC Software, Inc.*,
 610 F.3d 917 (5th Cir. 2010) ......................................................................12

*Danville v. Regional Lab Corp.,*
    292 F3d 1246 (10th Cir. 2002) .................................................................18

*Palasota v. Haggar Clothing Co.,*
    342 F.3d 569  (5th Cir. 2003) ..................................................................20

*Danzer v. Norden Sys., Inc.,*
    151 F.3d 50 (2d Cir.1998) ........................................................................20

*Kirsch v. Fleet Street, Ltd.,*
    148 F.3d 149 (2d Cir. 1998) ....................................................................20

*Tomassi v. Insignia Financial Group, Inc.,*
    478 F.3d 111 (2nd Cir. 2007) ..................................................................20

*Lynn v. Deaconess Medical Center - West Campus,*
    160 F.3d 484 (8th Cir. 1998) ...................................................................21

*Curry v. Menard, Inc.,*
    270 F.3d 473 (7th Cir. 2001) ...................................................................21

*Blow v. San Antonio,*
    236 F.3d 293 (5th Cir. 2001) ...................................................................23

*Risher v. Aldridge,*
    889 F.2d 592 (5th Cir. 1989) ...................................................................24

*Moore v. Eli Lilly & Co.,*
    990 F.2d 812 (5th Cir 1993) ....................................................................24

*Smith v. Berry Co.,*
    165 F.3d 390 (5th Cir. 1999) ...................................................................25

*McKennon v. Nashville Banner Pub. Co.,*
    513 U.S. 352 (1995) ..................................................................................25

*Welch v. Liberty Mach. Works, Inc.,*
    23 F.3d 1403 (8th Cir. 1994) ...................................................................25

*Dotson v. Pfizer, Inc.*,
    558 F.3d 284 (4th Cir. 2009) ........................................................25

*Ricky v. Mapco, Inc.*,
    50 F.3d 874 (10th Cir. 1995) ......................................................26

## <u>STATUTES AND OTHER</u>

Tex. Lab. Code Ann. § 21 ..........................................................1

29 U.S.C. § 623 ...........................................................................1

28 U.S.C. § 1331 .........................................................................1

28 U.S.C. § 1332 .........................................................................1

28 U.S.C. § 1291 .........................................................................1

Fed. R. Civ. P. 56 ........................................................................8

Michael J. Zimmer, Slicing & Dicing of Individual Disparate Treatment Law, 61

La. L. Rev. 577, 583 (2001) ......................................................18

Kerri Lynn Stone, Taking in Strays: A Critique of the Stray Comment Doctrine in

Employment Discrimination Law, 77 Mo. L. Rev. 149, 161 (2012) ....................19

## STATEMENT OF JURISDICTION

Plaintiff's Complaint alleged age discrimination under TEX. LAB. CODE ANN. § 21.001 et. seq. ("TCHRA"). (R1. 25-6).   Plaintiff amended to allege age discrimination under Section 623 (a)(1) of the Age Discrimination in Employment Act, 29 U.S.C. § 623 (a) ("ADEA"). (R1. 61-2).   The district court had diversity and federal question jurisdiction.  28 U.S.C. §§ 1331 and 1332.

The district court entered Summary Judgment April 24, 2012. (R4. 808). Swenson timely filed his Notice of Appeal May 23, 2012. (R4. 818).   This Court has jurisdiction under 28 U.S.C. § 1291.

Appellee Schwan's did not file a notice of appeal, so there is no cross-appeal before the Court.

## STATEMENT OF THE ISSUES

The issue is whether the district court erred in granting Schwan's motion for summary judgment. More specifically, whether there is a genuine fact issue as to whether Schwan's stated reason for its termination of Swenson was pretext for age discrimination and/or whether age-based animus was a motivating factor in the decision. Further, there is an issue as to whether Defendant/Appellee established its affirmative defense of "after-acquired evidence" as a matter of law.

## STATEMENT OF THE CASE

This is an appeal from a summary judgment entered in favor of Schwan's Consumer Brands and against Steven Swenson in the United States District Court

for the Western District of Texas. (R1. 10). Defendant-Appellee moved for summary judgment on January 30, 2012. (R1. 7).   After an order granting an extension of time to file a response, Plaintiff-Appellant filed its response in opposition to the motion on February 27, 2012. (R1. 8). The Defendant-Appellee filed its reply to the response on April 4, 2012, for which the court granted an extension of time to file. (R1. 9). The district court granted summary judgment in favor of Defendant-Appellee on April 24, 2012. (R1. 10).  The Plaintiff-Appellant filed its notice of appeal on May 23, 2012. (R1. 11).

## STATEMENT OF FACTS

Steven Swenson is a 59-year old man who began working for Schwan's in 1979 at the age of 26. (R3. 561).  Schwan's is a frozen food delivery company. Swenson worked his way up through the company ranks to the position of District Sales Manager. (R3. 484).  In this position, Mr. Swenson reported to the Regional Sales Manager position. (R3. 529).  At the time of his wrongful termination, the Regional Sales Manager position for Swenson's region was held by William Dale. *Id*.  Prior to becoming Regional Sales Manager, Mr. Dale was a District Sales Manager along side Mr. Swenson.  (R3. 551).  In this capacity both Dale and Swenson were supervised by then Regional Sales Manager, Don Richards. *Id*.

In November of 2008, Dale was promoted to the position of Regional Sales Manager.  (R3. 529).  Just over one year later, on January 18, 2010, Dale contacted Schwan's HR to request permission to immediately terminate Mr. Swenson.  (R3.

553). At this time, Dale was 48 years old.  Mr. Swenson was terminated by William Dale on February 1, 2010 - less than a month before Mr. Swenson's 57th birthday. (R3. 553-55).

Despite having terminated his employment, Dale admits that Mr. Swenson had an excellent reputation in the company, was a good employee, and had a strong work ethic. (R3. 489).   In fact, Mr. Swenson was the highest performing sales manager in the district according to internal objective measurements. (R3. 491).

Despite these facts, Dale wanted to replace Mr. Swenson with someone younger.  (R3. 559).  Following Dale's taking over of the district, Mr. Swenson was made the butt of age-related jokes by members of the management team. (R3. 492).  On at least two separate occasions in December 2009 (a month before Dale recommended Swenson's termination), Bill Dale was a part of conversations and laughed at age-related jokes made towards Mr. Swenson by John Barr, a fellow District Sales Manager. *Id.*   On one such occasion, Barr referred to Swenson as "My disabled dad" to a hotel clerk while the three men checked into a hotel. *Id.* On another occasion when the three were at a restaurant together, John Barr requested to a waiter that Mr. Swenson be brought "a senior citizen's menu."  *Id.*   On both occasions Dale laughed and thought the comments were "pretty funny." *Id.*

The following month, William Dale made the recommendation to Schwan's HR department that Mr. Swenson be terminated.   (R3. 553). Dale purportedly based his termination recommendation on the false allegation that Mr. Swenson

had violated Schwan's vacation policy.     (R3. 535). Specifically, Dale falsely accused Mr. Swenson of having "entered into an agreement" to knowingly pay a subordinate employee, Charles Foster, for fourteen days of vacation that the employee did not take off.  (R3. 554). This allegation was demonstrably false and made in bad faith.  In its motion for summary judgment, the Defendant restated its reason for discharging Swenson as being because "he [Swenson] encouraged and allowed Charles Foster, a subordinate employee, to use his vacation days but not actually take any time off from work." (R2. 311). The summary judgment record shows that this reason was demonstrably false and that Defendant's representatives knew of its falsity at the time the termination decision was made.

Charles Foster worked as a commissioned Customer Service Representative ("CSR") during the time period relevant to this case - 2009.   CSRs are sales people; they are not paid by the hour and they routinely work six days per week. (R3. 559; R3. 533; R3. 551-52; R3. 562). In 2009, Mr. Foster generally took Wednesday as his day off. (R3. 559; R3. 562). At some point in the latter half of 2009, Foster made a request to begin using vacation days in full-day increments on Saturdays so that he could have Saturday as well as Wednesday off. *Id.* Taking vacation in single day increments is expressly allowed by Schwan's policies. (R3. 563-66).[1] Foster did not work on his vacation days. (R3. 559; R3. 562).

———————————

[1] R3. 563-66 - Schwan's Vacation Policy - States as follows at page 3, bullet point 4 counting from the top: "Commissioned / Outside Sales, semi Drivers, and Short Haul Drivers may request and use their accrued vacation in full day increments."

In September 2009, the week after Foster's first approved Saturday vacation day, Schwan's Route Service payroll department contacted Mr. Swenson to inquire as to the vacation arrangements made for Mr. Foster.  (R3. 570-71).  Mr. Swenson explained that Mr. Foster generally worked six days per week and that that is why he had approved the vacation time. *Id.* The payroll department acknowledged Swenson and did not raise any question as to the practice or Swenson's explanation for same. *Id.* It is undisputed that the payroll department did not seek any further clarification or report the matter as questionable to any other person or department at the company.  According to Schwan's own vacation policy, "[p]ay practice rules are maintained by Route Service payroll." (R3. 566).

Despite the actual facts of the matter running contrary to the reasons given by Schwan's for its discharge of Mr. Swenson, Mr. Dale recommended his termination in January 2010.   Schwan's states that Swenson was terminated for violating its vacation policy. "Specifically, he encouraged and allowed Charles Foster, a subordinate employee, to use his vacation days but not actually take any time off from work." (R2. 311). This ended Mr. Swenson's three-decade career with Schwan's.

Importantly, Dale *did not* initially recommend the termination of Charles Foster who, it is undisputed, was under 40 years old. (R3. 553).   Foster was terminated for a different reason.

## A.   Schwan's HR Conducts "Investigation"

*After* Dale made his decision to terminate Mr. Swenson, he *then* contacted HR to have them do whatever was necessary to support his decision.  (R3. 553). As a part of this "investigation", HR interviewed Mr. Swenson and Mr. Foster. Both Swenson and Foster confirmed that Foster - not Swenson - had requested the vacation time. (R3. 490; R3. 559; R3. 562). Both Swenson and Foster confirmed that Foster actually took and used the vacation time in question rather than simply taking vacation pay and working the vacation days. (R3. 559; R3. 562).

Dale and the company's HR representative attempted to get Mr. Foster to blame Mr. Swenson and say that taking vacation time wasn't legitimate and was Swenson's idea. (R3. 559-60).   Dale told Foster that no action would be taken against him [Foster] if he "stated this was all Steven Swenson's idea." *Id.* Foster refused to falsely blame Swenson "because taking this vacation time was my [Foster's] idea and was legitimate." *Id.* Because he refused to make false statements against Steve Swenson in furtherance of Mr. Dale's effort to terminated Swenson, Foster was fired too. *Id.*


## B.  Similarly-Situated Younger Employees Received More Favorable Treatment

There is no evidence in the summary judgment record indicating that *any* other supervisor has ever been terminated by Schwan's for a similar violation of its vacation policy as that alleged against Mr. Swenson.  (R3. 551-52).

There is evidence in the summary judgment record, however, of similarly-situated, younger employees receiving more favorable treatment for *more serious* infractions of company policy.  William Dale, for one, who was reprimanded but not terminated for sending "inappropriate" emails to co-workers. (R3. 497; R3. 545).[2] Another similarly-situated, younger employee was an attendee at a company event in which he reportedly became intoxicated and was making inappropriate comments to other employees. (R3. 497; R3. 547-48).  This employee's conduct became so problematic that Mr. Dale, his supervisor, had to ask him to leave the event. *Id.* Despite this fact, Dale did not even reprimand him, let alone terminate his employment. Dale later had to be instructed to terminate this employee because the employee in question had been the source of numerous serious harassment complaints from multiple employees. *Id.*

## SUMMARY OF ARGUMENT

At issue on appeal is whether the district court erred in granting Defendant/ Appellee's motion for summary judgment.  More specifically, whether there is a genuine fact issue as to whether Schwan's stated reason for its termination of Swenson was pretext for age discrimination and/or whether age-based animus was a motivating factor in the decision. Further, there is an issue as to whether

---

[2] Dale testified under oath that he could not recall the nature of the inappropriate emails he sent (*i.e.* whether they were sexually inappropriate, racially inappropriate, age-based jokes, etc.)

Defendant/Appellee established its affirmative defense of "after-acquired evidence" as a matter of law.[3]

The summary judgment evidence presented below established a genuine issue as to a material fact as required by FED. R. CIV. P. 56. Had the district court properly analyzed the summary judgment evidence, it would not have granted Defendant/Appellee Schwan's motion for summary judgment. Said evidence requires a reversal of the district court's grant of summary judgment in favor of Defendant/Appellee after a *de novo* review of the issues.

The judgment of the district court should be reversed.

## **ARGUMENT**

*A. Standard of Review*

The review of a grant of a motion for summary judgment is *de novo*, applying the same standard as the district court. *Threadgill v. Prudential Sec. Group, Inc.,* 145 F.3d 286, 292 (5th Cir. 1998). The moving party is entitled to judgment as a matter of law only if the evidence does not establish a genuine issue of material fact. FED. R. CIV. P. 56(c).

---

[3] The district court did not address Defendant/Appellee's affirmative defense in any manner other than to issue an order stating that the motion was in all things granted. Plaintiff/Appellant is therefore obliged to address the issue on appeal.

B. *Swenson Established a Prima Facie Case of Age Discrimination*

Schwan's conceded and the court accepted that Swenson established a *prima facie* case. (R4. 801). It is undisputed that Swenson (1) was discharged; (2) that he was qualified for the position; (3) he was within the protected class at the time of the discharge; and (4) he was replaced by someone who was substantially younger.

C. *Schwan's Stated Reason for Discharge was a Pretext for Age Discrimination*

Schwan's stated reason for discharge of Swenson was pretext for age discrimination, as shown by the summary judgment evidence. Swenson produced evidence that: (1) Schwan's stated reason for discharge was false; (2) Schwan's knew its stated reason for discharge was false when it terminated Swenson; (3) discriminatory animus was displayed when Swenson was "made the butt of age-related jokes" by a member of the management team; (4) younger employees were treated more favorably in disciplinary decisions; and (5) Schwan's failed to follow its own progressive disciplinary policy when it terminated Swenson. This evidence, viewed as a whole, more than raises a fact question as to whether Schwan's true reason for terminating Swenson was age discrimination.

1. *The Evidence Presented Should Be Viewed as a Whole*

"The court must review the record 'taken as a whole.'" *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 150 (2000) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)). Below, inexplicably, the

district court viewed the evidence presented on a piece-by-piece basis and rejected each as not being sufficient, standing alone, to defeat summary judgment. The summary judgment evidence shows that Swenson's actions were not a violation of Schwan's vacation policy. Furthermore, even if Swenson's actions were a violation of vacation policy, evidence in the record would allow a jury would be allowed to disbelieve that Schwan's would terminate an employee for that reason. The evidence also shows that Swenson's supervisor, Bill Dale, took no disciplinary action against Swenson's co-workers for age-related remarks and repeatedly encouraged such age-related remarks. Further, Schwan's treated younger employees more favorably in disciplinary decisions and did not follow its own progressive disciplinary policy before terminating Swenson. Even if any one piece of evidence, standing alone, would not defeat summary judgment, the evidence viewed as a whole tells a compelling story of age discrimination by Schwan's against Mr. Swenson.

2. *Court Improperly Analyzes Evidence Indicating that Schwan's Stated Reason for Discharge is False.*

Schwan's stated reason for discharge is factually baseless, not the actual motivation for the discharge and/or insufficient to motivate the discharge. A fact finder may infer the ultimate fact of discrimination if they find that the employer's "proffered explanation is false **or** 'unworthy of credence.'" *Laxton v. Gap, Inc.*, 333 F.3d 572, 578 (5th Cir. 2003) (emphasis added); *see also Staten v. New Palace*

*Casino, LLC*, 2006 WL 1737438, 187 Fed. Appx. 350, 358 (5th Cir. 2006). "No further evidence of discriminatory animus is required because 'once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation.'" *Id*. (quoting *Reeves*, 530 U.S. at 147).   An employer is entitled to summary judgment only if a reasonable fact finder would be *compelled* to believe the employer's explanation is true.  *Argyropoulos v. City of Alton*, 539 F. 3d 724, 736 (7th Cir. 2008);   *Culver v. Gorman & Co*., 416 F.3d 540, 547-48 (7th Cir. 2005). Generally, an employee may show pretext by presenting evidence that the employer's reason for the adverse employment action was (1) factually baseless; (2) not the actual motivation for the discharge; or (3) insufficient to motivate the discharge. *See, e.g., Koski v. Standex Int'l Corp*., 307 F.3d 672, 677 (7th Cir. 2002) (citation omitted); *Raad v. Fairbanks North Star Borough School Dist*., 323 F.3d 1185, 1194 (9th Cir. 2003); *Laxton*, 333 F.3d at 579.

> *a. The district court misapplied Laxton.  Evidence that stated reason for discharge is factually false is sufficient to raise a fact issue that unlawful animus was, at the very least, a motivating factor for the discharge.*

The district court misapplied and failed to properly address Swenson's argument that Schwan's stated reason for discharge is false. Under this Court's decision in *Laxton*, "[e]vidence demonstrating that the employer's explanation is false or unworthy of credence, taken together with the plaintiff's *prima facie* case,

is likely to support an inference of discrimination even without further evidence of defendant's true motive." *Laxton*, 333 F.3d at 578 (*citing Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002); *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 223 (5th Cir. 2000)); *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010); *see also Reeves v. Sanderson Plumbing*, 530 U.S. 133, 143 (2000).

Citing to pre-*Laxton* and pre-*Reeves* decisions, the district court rejected *Laxton* and essentially held that the truth or falsity of Defendant's proffered reason for discharge must be addressed in isolation from the *prima facie* case and/or any other evidence of discriminatory animus and it will, therefore, always amount to "no evidence" of discrimination. (R4. 803). This is incorrect.

Under *Laxton*, the applicable inquiry in this case is whether the evidence supports an inference that Schwan's intentionally discriminated against Swenson, an inference that can be drawn if its proffered reason was not the real reason for discharge. Therefore, to survive Schwan's motion for summary judgment, Swenson must produce evidence permitting the jury to disbelieve that Schwan's proffered reason was its true motivation. The factfinder's disbelief of the reason put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the *prima facie* case, suffice to show intentional discrimination. *See Laxton*, 333 F.3d at 579-80.

   *b. Summary judgment evidence raises a fact issue as to the falsity of Schwan's stated reason for discharge.*

The summary judgment evidence raises a fact issue as to whether Schwan's stated reason for Swenson's termination was false or unworthy of credence. The evidence from multiple sources shows that Swenson did not violate a company policy, that his actions were approved by the company, and that the company's primary decision-maker regarding his discharge was aware of these facts when he fired Swenson. Such evidence raises a fact issue that the reason that Schwan's proffers for Swenson's termination is false or unworthy of credence.

> i. *Summary judgment record is clear that Swenson did not encourage and allow Charles Foster, a subordinate employee, to use his vacation days but not actually take any time off from work.*

Contrary to the appropriate standard of review for a motion for summary judgment, the district court completely ignored the evidence in the record demonstrating the falsity of Schwan's stated reason for discharge. The record in the case made clear that:

- Charles Foster requested to take vacation time in single day increments rather than being encouraged to do so by Swenson (R3. 490; R3. 559; R3. 562);

- Schwan's vacation policy specifically states that sales employees such as Foster may take vacation in single-day increments (R3. 565);

- Foster actually used the single-day increment vacation time authorized rather than working and receiving vacation pay at the same time (R3. 490; R3. 559; R3. 562).

Clearly, there is such a quantity and quality of evidence indicating the falsity of Schwan's stated reason for discharge that, when combined with Swenson's *prima facie* case, a jury could realistically infer that age was a motivating factor in the decision to terminate his employment.

> *ii. Summary judgment record established that Schwan's knew the company's stated reason for discharge was false at the time it terminated Swenson.*

In addition to the evidence that Schwan's stated reason for discharge was false, the record also contained summary judgment evidence that the company knew its reason was false when it terminated Swenson. Mr. Swenson and Charles Foster both provided the district court with sworn testimony establishing that *they told* Schwan's that Foster had requested to take vacation in single-day increments, that Foster *had not* been encouraged to use his vacation by Swenson, and that Foster *actually used* the single-day increment vacation time authorized rather than working and receiving vacation pay at the same time. (R3. 490; R3. 559-60; R3. 562; R3. 570).

The district court improperly ignored the existence of this evidence in its entirety -- evidence that, at the very least, calls Schwan's good faith belief that the violation in question had occurred into question. (*See* R4. 803).

> *iii. Schwan's Payroll Department did not disapprove of the action when informed of it and the vacation policy states that said department administers the rule.*

Additionally, Swenson's conduct was cleared by Schwan's own payroll department, who is expressly in charge of said rules.   Under Schwan's vacation policy, "[p]ay practice rules are maintained by Route Service payroll." (*See* R3. 566).   Schwan's payroll department contacted Swenson via email regarding Foster taking Saturday as a vacation day. (*See* R3. 570-71). In reply, Swenson clearly explained that Foster would be taking several Saturdays off. *See Id.* Payroll did not indicate that Swenson's actions were in violation of company policy.   Notably, there is no evidence suggesting that anyone from payroll, who is expressly in charge of the vacation pay rules, was disciplined or terminated for clearing Foster's vacation days. Based on this evidence, a reasonable jury could infer that Swenson's actions were authorized by Schwan's and disbelieve Schwan's stated reason for termination.

> *iv. Former District Manager for the exact same territory confirmed that Swenson's actions were not a violation of the vacation policy*

*in question and that the violation of said policy would not be a terminable offense in any event.*

Further, Don Richards, former supervisor of Steven Swenson *and* William Dale, verified under oath that Swenson's actions with regard to Foster's vacation requests were *not* in violation of company policy and were *not* a valid reason for immediate discharge. (R3. 551-52.). Don Richards' statements go to verify what was already apparent from Schwan's vacation policy and from the Payroll Department's actions--that Swenson's actions did not violate company policy and that Schwan's did not have a good faith belief in its own stated reason for discharge. The district court did not acknowledge or address this evidence in any respect.

Despite the numerous indications that Swenson's actions were not a violation of company policy, Schwan's still uses its vacation policy as the sole reason Swenson was terminated. However, as the evidence above makes clear, Schwan's stated reason for terminating Swenson obviously was not the true reason.

> *c. Evidence Schwan's tried to force an employee to lie to support its termination decision further evidence that Schwan's did not have a good faith belief in its stated reason for discharge.*

As noted above, the district court misinterpreted *Laxton* and essentially sought to require that Swenson submit direct evidence that Schwan's did not have a good faith belief in its stated reason for discharge. (R4. 803). While Swenson

disagrees that a conclusion regarding a defendant's good faith belief may never be inferred from other evidence, it should be noted that the summary judgment record below actually did contain such evidence. Swenson put on summary judgment evidence in the form of sworn testimony establishing that Schwan's affirmatively attempted to pressure Swenson's subordinate, Foster, into lying about what had occurred regarding his vacation request in order to support Swenson's termination. (R3. 559-60).

Specifically Schwan's decision-maker, William Dale, tried to pressure Charles Foster to lie about Swenson's activities to support Dale's decision to terminate him. (R3. 559-60). When Foster refused to lie for the company, he too was terminated. *Id.* This unsuccessful attempt to manufacture a legitimate reason for Swenson's termination indicates that Schwan's did not actually have a good faith belief that a violation of its policies had actually occurred.

3.  *District Court Improperly Disregarded Evidence of Discriminatory Animus*

The Fifth Circuit has recognized the inherent value of workplace remarks as circumstantial evidence of discriminatory intent, even though such remarks may be "stray remarks" that would not ordinarily suffice as direct evidence of employment discrimination. *See Russell v. McKinney Hosp. Venture*, 235 F.3d at 225 (holding that workplace remarks sufficed as circumstantial evidence from which an inference of discriminatory intent could be drawn even though comments were

found to be "stray remarks" under the *CSC Logic* test); *see also, Danville v. Regional Lab Corp.*, 292 F3d 1246, 1251 (10th Cir. 2002) (holding same); Michael J. Zimmer, Slicing & Dicing of Individual Disparate Treatment Law, 61 La. L. Rev. 577, 583 (2001) ("Evidence that, if believed, shows that the age of a worker was on the mind of a decision maker does not require a fact finder to draw the inference that [the] worker's discharge was because of his age, but it surely supports . . . drawing that inference.").

Accordingly, an employee wishing to use workplace remarks as circumstantial evidence of employment discrimination -- not direct evidence -- need only prove that the remarks demonstrate (1) discriminatory animus (2) on the part of a person that is either primarily responsible for the challenged employment action or by a person with influence or leverage over the relevant decision-maker. *Laxton*, 333 F.3d at 583; *Sandstad*, 309 F.3d at 899; *Russell*, 235 F.3d at 225. In the case at bar, Dale's participation in and ratification of such statements made by his direct subordinate and aimed squarely at Swenson certainly indicated a discriminatory animus on his part and the district court erred when it discounted these statements as not having any probative value.

The district court, engaging in a conclusory analysis, improperly disregards evidence of discriminatory animus on the part of Swenson's supervisor, Bill Dale, that shows that he repeatedly engaged in conversations disparaging Swenson's age immediately prior to terminating him. The summary judgment evidence shows

that Mr. Swenson was made the butt of age-related jokes by members of the management team. (R3. 492). Further, the evidence shows that on at least two separate occasions in December 2009 Bill Dale participated in discussions and laughed at age-related jokes made at the expense of Mr. Swenson by John Barr, a fellow district manager and a direct report to Bill Dale.  (R3. 492).  On one such occasion, Barr referred to Swenson as "My disabled dad" to a hotel clerk while Swenson, Barr, and Dale checked into a hotel. *Id.* On another occasion when the three men were at a restaurant together, Barr requested to a waiter that Swenson be brought a "senior citizen's menu." *Id.* Not only did Dale not take any action to call Mr. Barr down for this behavior, on both occasions he laughed and thought the comments were "pretty funny." *Id.*  The following month, Dale fired Mr. Swenson and replaced him with a younger employee. (R3. 553).

William Dale's participation in and failure to stop conversations that belittled Swenson's age evince Dale's own age-related bias against Swenson. Such a situation "may reflect a workplace environment that is rife with or permeated by discrimination that may affect a decision maker's own bias and/or his tolerance for or even encouragement of others' discriminatory animus."   Kerri Lynn Stone, Taking in Strays: A Critique of the Stray Comment Doctrine in Employment Discrimination Law, 77 Mo. L. Rev. 149, 161 (2012).  Instead of acknowledging that the remarks at issue reflect Dale's own discriminatory animus, the district

court disregarded the evidence entirely, holding that these remarks have "no probative value whatsoever." (R3. 805).

The district court erred in analyzing the remarks at issue in this case (and the decision-maker's reaction to same) in isolation from the rest of the case and in a wholly binary fashion. (R3. 803-05). The reality is that statements such as those at issue in this case must be analyzed within the context of the case in its entirety and are often probative of discriminatory intent even if they would not, standing along, support a verdict for the Plaintiff. *See Palasota v. Haggar Clothing Co.,* 342 F.3d 569, 577 (5th Cir. 2003). The more a remark evinces a discriminatory state of mind, and the closer the remark's relation to the allegedly discriminatory behavior, the more probative that remark will be. *See Danzer v. Norden Sys., Inc.,* 151 F.3d 50, 56 (2d Cir.1998) (explaining that the label "stray" is inappropriate where other indicia of discrimination tie the remarks to an adverse employment action); *see also Kirsch v. Fleet Street, Ltd.,* 148 F.3d 149, 162-63 (2d Cir. 1998) (rejecting the label "stray" where decision-makers uttered age-related remarks near the time of plaintiff's discharge)

The court should have viewed "all the evidence in the light most favorable to the plaintiff to determine whether it could support a reasonable finding in the plaintiff's favor." *Tomassi v. Insignia Financial Group, Inc.,* 478 F.3d 111, 115 (2nd Cir. 2007). If the court had done so, it would have determined that Dale's repeated participation in conversations regarding Swenson's age and his failure to

stop disparaging remarks regarding Swenson's age were probative of Dale's discriminatory animus. And in fact, despite ultimately holding otherwise, the district court later appeared to admit that the conduct in question constituted "evidence tending to indicate that discrimination may have been a factor in Plaintiff's termination . . . ." (R3. 807).

4. *Court Improperly Disregards Evidence of Disparate Treatment of*
   *Younger Employees*

Schwan's discriminatory animus against Swenson is also illustrated by evidence showing that younger employees of Schwan's who engaged in objectively worse behavior than Swenson were treated more favorably than Swenson. While Swenson and the younger employees may not have engaged in the exact same behavior, "[to] require that employees always have to engage in the exact same offense as a prerequisite for finding them similarly situated would result in a scenario where evidence of favorable treatment of an employee who has committed a different but more serious, perhaps even criminal offense, could never be relevant to prove discrimination." *Lynn v. Deaconess Medical Center - West Campus*, 160 F.3d 484, 488 (8th Cir. 1998) (*see also Curry v. Menard, Inc.*, 270 F. 3d 473, 479 (7th Cir. 2001)). Such a scenario should be rejected as against common sense. *Id.* Here, the district court goes against common sense, and the facts, and decides that the evidence showing that Schwan's treated younger

employees more favorably for objectively worse behavior is "wholly without any probative value as to Defendant's age discrimination." (R3. 806).

William Dale, for one, was reprimanded but not terminated for sending "inappropriate" emails to co-workers during a period when he held the same job position as that occupied by Mr. Swenson. (R3. 497; R3. 545). Another similarly-situated, younger employee was an attendee at a company event in which he reportedly became intoxicated and was making inappropriate comments to other employees. (R3. 497; R3. 547-48). This employee's conduct became so problematic that Mr. Dale, his supervisor, had to ask him to leave the event. *Id*. Despite this fact, Dale did not even reprimand him, let alone terminate his employment. *Id.* Dale later had to be instructed to terminate the younger employee because the employee in question had been the source of numerous serious harassment complaints from multiple employees. (R3. 497; R3. 547-48).

Once again, the district court improperly views the evidence above in the light most favorable to the moving party, Schwan's, and decides that the multiple harassment complaints directed at the similarly-situated, younger employees show that his behavior was "at worst...rude and immature." (R3. 806). Further, the district court appears to make up its own facts when it states that "[Swenson] was accused by [Schwan's], essentially, of being dishonest and causing actual cash to vacate the company's coffers...." *Id.* And while Schwan's stated reason for its termination of Swenson has evolved over time, it is clear that Schwan's does not

22

assert that Swenson was attempting to steal from the company or cause the company to lose money, as the district court seems to imply. (R3. 545).

A comparison of Swenson to similarly-situated, younger employees shows that Dale failed to terminate, or even reprimand, a younger employee after repeated violations of a clear company policy while he immediately terminated Swenson for a reason that he cannot clearly state. While this comparison may not fit into the district court's narrowly fashioned box, it goes against common sense to say that this evidence is "wholly without any probative value as to [Schwan's] age discrimination." (R3. 806).

5. *Court Improperly Disregards Evidence of Schwan's Failure to Follow Its Own Progressive Disciplinary Policy*

When an employer does not follow its own disciplinary policy that alone allows the trier of fact to infer discriminatory intent. *See e.g., Blow v. San Antonio,* 236 F.3d 293, 296 (5th Cir. 2001). The summary judgment evidence produced shows that Schwan's utterly failed to follow its own progressive discipline policy with regard to Mr. Swenson. (R3. 545). Instead, the evidence shows that Schwan's jumped straight to termination for an offense that, even if true, certainly was not an offense requiring immediate termination. (R3. 552).

The district court cites this Court in stating that "an employer's 'disregard of its own [policies] does not of itself conclusively establish that improper discrimination occurred or that a nondiscriminatory explanation for an action is

pretextual.'" (R3. 806) (*citing Risher v. Aldridge*, 889 F.2d 592, 597 (5th Cir. 1989); *see also Moore v. Eli Lilly & Co.*, 990 F.2d 812, 819 (5th Cir 1993)). However, in the case at bar, Schwan's disregard of its own policies was not the only evidence that improper discrimination occurred or that the company's nondiscriminatory explanation for his termination was pretextual. Rather, this is a case in which the employer has proffered a false reason for discharge, has pressured employees to lie, has demonstrated a discriminatory animus through its tolerance of discriminatory statements regarding Swenson, has treated similarly-situated younger employees more favorably, *and* has failed to follow its own disciplinary procedures. Again, the district court's attempt to view each piece of evidence in isolation prevents it from seeing the the obvious discrimination at issue in this case.

D. *Schwan's is Not Entitled to Partial Summary Judgment on the Basis of So-Called After-Acquired Evidence*

While the district court did not base its decision or otherwise address Schwan's affirmative defense of after-acquired evidence, Swenson addresses its argument here out of an abundance of caution. Schwan's argued below that Swenson's ability to recover front or back pay is precluded by the existence of "after-acquired evidence" --i.e., evidence that an employee engaged in misconduct that would have justified the employee's immediate discharge, but for the fact that

the employer did not acquire the evidence until after the discharge. Schwan's claims that Swenson purposely falsified his employment application with regard to a drivers' license suspension in the 1970s.

"Where an employer seeks to rely upon after-acquired evidence of wrongdoing, it must first establish that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it at the time of the discharge." *Smith v. Berry Co.*, 165 F. 3d 390, 395 (5th Cir. 1999) (citing *McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352, 362-63 (1995)).

Schwan's produced no evidence that it has ever terminated an employee for failing to list a suspended license on a job application. The only evidence defendant cites to at all is a generic affidavit from an HR representative. (R2 322-23). This declaration is wholly self-serving. *See, e.g. Welch v. Liberty Mach. Works, Inc.,* 23 F.3d 1403, 1406 (8th Cir. 1994) (employer's affidavit was a self-serving document, and did not establish the fact, for purposes of summary judgment, that it would have taken adverse employment action if it had known about employee's alleged misconduct). Considering that Schwan's produced no evidence that any of its employees have ever been terminated on these grounds, and the self-serving nature of Schwan's declarations, a reasonable jury could find that Schwan's would not have terminated Swenson. *See, e.g. Dotson v. Pfizer, Inc.*, 558 F.3d 284 (4th Cir. 2009) (whether after-acquired evidence defense applied to

limit company's liability was question for jury); *Ricky v. Mapco, Inc.*, 50 F.3d 874 (10th Cir. 1995) (whether employer would have terminated employee was question for jury in discrimination suit in which employer invoked after-acquired evidence doctrine).

Additionally, Mr. Swenson submitted summary judgment evidence that seriously calls into question the factual basis as to this affirmative defense. (R3. 561). Specifically, Swenson produced evidence showing that he previously was hired by Schwan's based on an application that indicated his license had at one point been suspended or revoked. *Id.* Therefore, whether Schwan's would actually have terminated Swenson is a disputed issue of material fact. Schwan's has certainly not established the issue as a matter of law, and Schwan's was therefore not entitled to summary judgment on this affirmative defense.

## CONCLUSION

Appellant Steven Swenson respectfully prays that this Court reverse the judgment of the district court in all respects, and award Swenson all costs and provide such further relief as to which he is entitled.

Respectfully submitted,

**THE MCKINNEY LAW FIRM**
    A PROFESSIONAL CORPORATION


By: _/s/ Christopher J. McKinney_
Christopher J. McKinney
State Bar No. 00795516

26

Ashley Barr
State Bar No. 24078198
700 East Sonterra, Ste 1221
San Antonio, Texas  78258
Telephone: (210) 832-0932
Facsimile: (210) 568-4101
*chris@themckinneylawfirm.com*
*ashley@themckinneylawfirm.com*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing document has been delivered, as designated below, on August 6, 2012.

Alan L. Rupe
Texas Bar No. 24028461
alan.rupe@kutakrock.com
KUTAK ROCK LLP
1605 N. Waterfront Pkwy.,
Suite 150 Wichita, KS 67206
Telephone: (316) 609-7900
Facsimile: (316) 630-8021

___ Hand Delivery
___ Facsimile Transmission
___ Certified Mail, Return Receipt Requested
___ U.S. First Class Mail
X  Electronic Filing (ECF)

_/s/ Christopher J. McKinney_
CHRISTOPHER J. MCKINNEY

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Fifth Circuit Rule 32.2 and 32.3, the undersigned certifies this brief complies with the type-volume limitations of said Fed. R. App. P. 32(a)(7).

1. Exclusive of the exempted portions in 5th Circuit Rule 32.2, the brief contains 6,260 words printed in a proportionally spaced typeface.

2. The brief has been prepared in proportionally spaced typeface using Times New Roman 14 point text and Times New Roman 12 point in footnotes produced by Pages 2009 software.

3. The undersigned understands a material misrepresentation in completing this certificate, or circumvention of the type-volume limits in Fed. R. App. 32(a)(7), may result in the Court's striking the Brief and imposing sanctions against the person signing the brief.


By:

*/s/ Christopher J. McKinney*
CHRISTOPHER J. MCKINNEY